1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18

| | |
|---|---|
| EFFIE BARNEY,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | Case No. ED CV 09-1733 JCG<br><br>**MEMORANDUM OPINION AND ORDER** |

19
20
21
22
23
24
25
26
27
28

On September 11, 2009, plaintiff Effie Barney ("Plaintiff") filed a complaint against defendant Michael J. Astrue ("Defendant"), the Commissioner of the Social Security Administration, seeking review of a denial of supplemental security income benefits. [Docket No. 1.] On March 19, 2010, Defendant filed his answer, along with a certified copy of the administrative record. [Docket Nos. 10, 12.] On April 14, 2010, this matter was transferred to the calendar of the undersigned Magistrate Judge. [Docket No. 15.] Both Plaintiff and Defendant subsequently consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Docket Nos. 14, 17.] Pursuant to a September 18, 2009 case management order, the

1   parties submitted a detailed, 14-page joint stipulation for decision on May 21, 2010.
2   [Docket No. 16.]  The Court deems the matter suitable for adjudication without oral
3   argument.

4          In sum, having carefully studied, *inter alia*, the parties' joint stipulation and
5   the administrative record, the Court concludes that, as detailed herein, the
6   Administrate Law Judge inappropriately discounted Plaintiff's subjective complaints
7   and thus remands this matter to the Commissioner in accordance with the principles
8   and instructions enunciated in this Memorandum Opinion and Order.

9                                              **I.**
10        **PERTINENT FACTUAL AND PROCEDURAL BACKGROUND**

11         Plaintiff has an eleventh grade education and was 44 years old on her alleged
12  onset date of disability.  (*See* Administrative Record ("AR") at 84, 561.)  Plaintiff is
13  also obese; she is four feet eleven inches and weighs approximately 270 pounds.
14  (*Id.* at 140.)  Her prior relevant work includes employment as a caregiver, sales
15  clerk, assembler, and telemarketer.  (*Id.* at 22, 63, 132-139, 553-554.)

16         On October 7, 2005, nearly five years ago, Plaintiff filed for supplemental
17  security income ("SSI"), claiming that she has been disabled since December 30,
18  2004 due to a brown recluse spider bite, high blood pressure, and a thyroid
19  condition.  (*See* AR at 76, 84.)   Plaintiff's application was denied after which she
20  filed a timely request for a hearing.  (*Id.* at 74, 76-80.)

21         On August 2, 2007, approximately two years after her application, Plaintiff,
22  proceeding *pro se*, appeared and testified at a hearing before an Administrative Law
23  Judge ("ALJ").  (AR at 558, 560-574.)  On January 24, 2008, the ALJ issued an
24  unfavorable decision denying Plaintiff's request for benefits ("January 2008
25  Decision").  (*Id.* at 55-63.)

26         Plaintiff appealed and, on July 11, 2008, the Appeals Council vacated the
27  January 2008 Decision and remanded the case to the ALJ for further proceedings.
28  (*See* AR at 38-40, 42-45.)  The Appeals Council directed the ALJ to give further

1  consideration to Plaintiff's residual functional capacity ("RFC") and obtain

2  supplemental evidence from a vocational expert ("VE").  (*Id.* at 39.)

3        On February 13, 2009, Plaintiff, represented by counsel, appeared and

4  testified at another hearing before the ALJ.  (AR at 539, 541-552.)  The ALJ also

5  heard testimony from Joseph Mooney, a VE.  (*Id.* at 539, 553-557.)

6        On April 7, 2009, the ALJ denied Plaintiff's request for benefits.  (AR at 12-

7  23.)  Applying a well-established five-step sequential evaluation process – which is

8  discussed below – the ALJ found, at step one, that Plaintiff has not engaged in

9  substantial gainful activity since her SSI application date.  (*Id.* at 14.)

10        At step two, the ALJ found that Plaintiff suffers from severe impairments

11  consisting of "[n]on-insulin diabetes mellitus, venous insufficiency in the left lower

12  extremity with transient bouts of left lower extremity cellulitis, hypertension, and

13  obesity with a history of diffuse body pain and obesity related sleep apnea[, and]

14  questionably severe depression."  (AR at 14 (bold omitted).)

15        At step three, the ALJ determined that the evidence does not demonstrate that

16  Plaintiff's impairments, either individually or in combination, meet or medically

17  equal the severity of any listing set forth in the Social Security regulations.[1]  (AR at

18  14.)

19        The ALJ then assessed Plaintiff's RFC[2] and determined that she can perform

20  light work, but limited her to "occasional climbing, stooping, kneeling, crouching,

21  and crawling."  (AR at 15 (bold omitted).)   Based on Plaintiff's RFC, the ALJ

22

23      [1]  *See* 20 C.F.R. pt. 404, subpt. P, app. 1.

24

25      [2]  Residual functional capacity is what a claimant can still do despite existing
exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152, 1155

26  n. 5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the
ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's

27  residual functional capacity."  *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th

28  Cir. 2007).

3

found, at step four, that Plaintiff lacks the ability to perform her past relevant work. (*Id.* at 22.)

At step five, based on Plaintiff's vocational factors and the VE's testimony, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," including cleaner, housekeeper, and packager. (AR at 22 (bold omitted).) Thus, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the Act because she could adjust to her impairment and find another type of gainful employment. (*Id.* at 12, 23.)

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. (AR at 4-6, 8.) The ALJ's decision stands as the final decision of the Commissioner.

## II.

## APPLICABLE LEGAL STANDARDS

A.    Five-Step Inquiry To Ascertain A Cognizable Disability

A claimant must satisfy three fundamental elements to be eligible for disability benefits: (1) a medically-determinable impairment; (2) the impairment prevents the claimant from engaging in substantial gainful activity; and (3) the impairment is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). A well-established five-step sequential inquiry is utilized to assess whether a particular claimant satisfies these three elements. The inquiry proceeds as follows:

First, is the claimant engaging in substantial gainful activity? If so, the claimant cannot be considered disabled.

Second, does the claimant suffer from a "severe" impairment, *to wit*, one continuously lasting at least 12 months? If not, the claimant is not disabled.

Third, does the claimant's impairment or combination of impairments meet or equal an impairment specifically identified as a disability by the Commissioner

4

1   under 20 C.F.R. part 404, subpart P, appendix 1?  If so, the claimant is automatically
2   determined to be disabled.

3       Fourth, is the claimant capable of performing his or her past work?  If so, the
4   claimant is not disabled.

5       Fifth, does the claimant have the so-called "residual functional capacity" to
6   perform some other type of work?   The critical question posed here is whether the
7   claimant can, in light of the impairment and his or her age, education and work
8   experience, adjust to another form of gainful employment?

9       If a claimant is found "disabled" or "not disabled" along any of these steps,
10  there is no need to complete the remaining inquiry.  20 C.F.R. §§ 404.1520(a)(4) &
11  416.920(a)(4); *Tackett*, 180 F.3d at 1098-99.

12      B.      Standard of Review on Appeal

13      This Court is empowered to review decisions by the Commissioner to deny
14  benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
15  Administration must be upheld if they are free of legal error and supported by
16  substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001, *as
17  amended* Dec. 21, 2001).  If the court, however, determines that the ALJ's findings
18  are based on legal error or are not supported by substantial evidence in the record,
19  the court may reject the findings and set aside the decision to deny benefits.
20  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*,
21  242 F.3d 1144, 1147 (9th Cir. 2001).

22      "Substantial evidence is more than a mere scintilla, but less than a
23  preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant
24  evidence which a reasonable person might accept as adequate to support a
25  conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d
26  at 459.  To determine whether substantial evidence supports the ALJ's finding, the
27  reviewing court must review the administrative record as a whole, "weighing both
28  the evidence that supports and the evidence that detracts from the ALJ's

conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

### III.

### ISSUES PRESENTED

Two disputed issues are presented for decision here:

1. Whether the ALJ's finding that Plaintiff can stand and/or walk for six hours a day adequately considers the opinions of treating physician Dr. Kedlaya and consultative examiner Dr. Tamiry as well as the evidence of morbid obesity and osteoarthritis in the right ankle and knee, (*see* Joint Stip. at 4-7); and

2. Whether the finding that Ms. Barney's subjective complaints are not credible is supported by substantial evidence.  (*See id.* at 4, 9-11.)

At this juncture, the Court finds the latter issue to be dispositive of this matter, and does not reach the first issue.

### IV.

### DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ failed to properly assess her credibility and improperly disregarded her allegations of subjective symptoms.  (*See* Joint Stip. at 9-11.)  Defendant argues that Plaintiff's credibility was properly weighed and found not credible, particularly because of her inconsistent testimony concerning the performance of her daily chores and her medical history reflecting that her cellulitis had improved.  (*Id.* at 12-13.)  The Court concurs with Plaintiff.

A.  The ALJ Must Provide Clear and Convincing Reasons For Discounting Plaintiff's Subjective Complaints

Plaintiff, of course, carries the burden of producing objective medical

evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). But once a plaintiff meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997, *as amended* Sept. 17, 1997) ("[A] claimant need not present clinical or diagnostic evidence to support the severity of his pain.") (internal citation omitted).

Under these circumstances, an ALJ can then reject a plaintiff's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing a plaintiff's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here, the ALJ did not find evidence of malingering. (*See generally* AR at 12-23; *see id.* at 18-19 (ALJ adopting the opinion of consultative examiner Sandra M. Eriks, M.D. ("Dr. Eriks")), 184-189 (Dr. Eriks reporting Plaintiff to be a "good historian")). Thus, the ALJ's reasons for rejecting Plaintiff's credibility must rest on clear and convincing reasons. *See Benton*, 331 F.3d at 1040. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995, *as amended* April 9, 1996); *Reddick*, 157 F.3d at 722.

B.    Plaintiff's Subjective Complaints

In Plaintiff's disability report, dated June 28, 2006, approximately seven months after she filed her application, Plaintiff stated that her impairments have

1   limited her walking and "ability to stand" and she is "not able to clean [her] house
2   much like [she] use[d] to or wash clothes and cook for [her] husband at all." (AR at
3   100, 104, 107.)  Plaintiff also reported that she experiences "cramps from head to
4   feet," including headaches, back aches, and pain in her legs. (*Id.* at 100.)  With
5   respect to her daily activities, Plaintiff indicated that she is "not allow[ed] to do
6   much of what [she] use[d] to do" in terms of "cooking, cleaning, bathing," making
7   her bed, brushing her hair, washing her face, and brushing her teeth. (*Id.* at 104.)

8           At the administrative hearing, Plaintiff testified that she stopped working in
9   December of 2004 after she "was bit by a spider" and experienced swelling and
10  ulcers on her leg. (AR at 541-543.)  Plaintiff explained that she was hospitalized for
11  approximately three weeks. (*Id.* at 543.)  Plaintiff's medical treatment subsequently
12  established that she developed cellulitis[3] as a result of the spider bite. (*See*, *e.g.*, *id.*
13  at 341-342.)  Plaintiff also testified that she suffers from arthritis in her right knee
14  and ankle, "and now it's . . . running from [her] leg all the way up to [her] hips."
15  (*Id.* at 546.)  Plaintiff reported that she feels "tingling" and "numb" in her legs due to
16  neuropathy from diabetes. (*Id.*)

17          Further, Plaintiff used a walker at the hearing and explained that an
18  emergency room physician prescribed the walker for her when she was diagnosed
19  with arthritis in her ankle. (AR at 549.)  Plaintiff stated that she can walk "less than
20  a block," can stand no more than ten minutes at a time, can sit for approximately 15
21  to 20 minutes before she "need[s] to change . . . position[s]." (*Id.* at 550.)

22          C.    ALJ's Purported Reasons For Discounting Plaintiff's Credibility
23          In rejecting Plaintiff's credibility, the ALJ incorporated his credibility
24  discussion from the January 2008 Decision. (AR at 16 ("[A]s discussed in the prior
25  decision dated January 24, 2008, and incorporated herein, I find [Plaintiff's]
26
27  _____
28      [3]  Cellulitis is the "[i]nflammation of cellular or connective tissue." *Stedman's*
    *Medical Dictionary* 307 (26th ed. 1995).

1  subjective complaints do not credibly establish a residual functional capacity less

2  than found herein.").)  In the January 2008 Decision, with respect to Plaintiff's

3  credibility, the ALJ merely found that Plaintiff's "own residual functional capacity

4  assessment . . . [is] quite exaggerated in its limitations and unsupported by

5  documented pathology."  (*Id.* at 62.)

6       In the instant decision, the ALJ discounted Plaintiff's allegations of pain

7  because "her statements are not consistent."  (AR at 16.)  In particular, the ALJ

8  found that Plaintiff "reported occasional back pain but denied any back pain at the

9  time of the consultative examination [with Dr. Eriks] and she also admitted that her

10  symptoms are relieved with taking Celebrex."  (*Id.*)  The ALJ also found that "while

11  [Plaintiff] reported she does little in the way of daily activities and household chores

12  . . .[, Plaintiff] describes her activities of daily living to Dr. Eriks as . . . [doing] all of

13  the cooking, cleaning, shopping, and most of the driving" for her husband and

14  herself.  (*Id.*)  The ALJ further rejected Plaintiff's credibility based on the fact that

15  "she does not use an assistive device for ambulation."  (*Id.*)

16       Having scrutinized the AR, the Court is persuaded that the ALJ failed to

17  provide clear and convincing reasons and/or substantial evidence for discounting

18  Plaintiff's credibility, as determined in both the January 2008 Decision and the

19  instant decision.

20       D.   <u>ALJ Inappropriately Discounted Plaintiff's Credibility In The January</u>

21            <u>2008 Decision</u>

22       As an initial matter, other than his recitation of portions of Plaintiff's medical

23  history and her testimony, the ALJ does not specify in his January 2008 Decision

24  which symptom testimony he found not credible or provide any clear and convincing

25  reasons for his rejection of Plaintiff's pain allegations.  *See Benton*, 331 F.3d at 1041

26  (The ALJ must state "which symptom testimony he found not credible with enough

27  specificity to allow a reviewing court to confirm that the testimony was rejected on

28  permissible grounds and not arbitrarily.").

1    Moreover, the ALJ erred in rejecting Plaintiff's credibility in the January 2008
2    Decision based on the lack of "documented pathology." (AR at 62.) Plaintiff
3    provided sufficient medical evidence of underlying impairments that were
4    reasonably likely to cause the symptoms she described. For instance:

5    1.    Consultative examiner Dr. Eriks described Plaintiff's "[t]andem gait" as
6    "somewhat difficult due to obesity" and "[h]eel and toe walking" as "declined."
7    (AR at 187.)

8    2.    Treatment note, dated January 21, 2009, diagnosed arthritis in
9    Plaintiff's right ankle and reported pain due to arthritis. (*Id.* at 221.)

10   3.    Treatment note, dated September 26, 2008, reported "poor circulation"
11   and pain in legs and diagnosed diabetes. (*Id.* at 225.)

12   4.    Diagnostic x-ray report, dated September 26, 2008, found "[m]arginal
13   blunt osteophytes on the tibial plateau and patella" and diagnosed osteoarthritis. (*Id.*
14   at 237.)

15   5.    Treatment note, dated January 26, 2007, described Plaintiff as
16   "morbidly overweight" and suffering from "recurrent cellulitis of the lower
17   extremities" and "chronic leg edema." (*Id.* at 298.)

18   6.    Treating physician's January 2006 report indicated "extensive and very
19   severe cellulitis." (*Id.* at 342.)

20   7.    Treating physician report, dated January 4, 2006, indicated Plaintiff
21   complained of pain and diagnosed "severe left leg cellulitis." (*Id.* at 424.)

22   Because Plaintiff produced sufficient medical evidence of underlying
23   impairments that are likely to cause pain and other subjective symptoms, the ALJ
24   erred to the extent he rejected Plaintiff's credibility based upon a lack of objective
25   findings to support her allegations. *See Bunnell*, 947 F.2d at 345 ("[O]nce the
26   claimant produces objective medical evidence of an underlying impairment, [the
27   ALJ] may not reject a claimant's subjective complaints based solely on a lack of
28   objective medical evidence to fully corroborate the alleged severity of pain."); Social

10

1   Security Ruling ("SSR") 96-7P,[4/] 1996 WL 374186, at *1 ("An individual's

2   statements about the intensity and persistence of pain or other symptoms or about

3   the effect the symptoms have on his or her ability to work may not be disregarded

4   solely because they are not substantiated by objective medical evidence.").

5          E.      ALJ Inappropriately Discounted Plaintiff's Credibility in the Instant

6                  Decision

7          With respect to the ALJ's reasons for discounting Plaintiff's credibility as

8   discussed in his most recent decision (*e.g.*, inconsistencies in her reports of back

9   pain, inconsistencies in her reports of daily activities, and lack of use of an "assistive

10  device for ambulation"), the Court finds that the ALJ's reasons are not clear and

11  convincing and/or are not supported by the record.  Three particular reasons guide

12  this Court's decision.

13         First, the Court disagrees with the ALJ's conclusion that Plaintiff's testimony

14  is internally inconsistent because she "reported occasional back pain but denied any

15  back pain at the time of the consultative examination [with Dr. Eriks] and she also

16  admitted that her symptoms are relieved with taking Celebrex."  (AR at 16.)  Dr.

17  Eriks's precise statements were, Plaintiff "states that she has occasionally had

18  problems with her back; although, is not currently having problems with that at this

19  time. . . . [She] is doing much better on the Celebrex[.]"  (*Id.* at 184.)  As such,

20  Plaintiff did not make inconsistent statements regarding her back pain.

21         Rather, Plaintiff explained to Dr. Eriks that she "occasionally" suffers from

22

23         [4/] "The Commissioner issues Social Security Rulings [("SSRs")] to clarify the
24  Act's implementing regulations and the agency's policies.  SSRs are binding on all
    components of the SSA.  SSRs do not have the force of law.  However, because they
25  represent the Commissioner's interpretation of the agency's regulations, we give
26  them some deference.  We will not defer to SSRs if they are inconsistent with the
    statute or regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir.
27  2001) (internal citations omitted).

28

1   back pain, but that her symptoms were *improving* on Celebrex.  Thus, the ALJ's

2   paraphrasing of Dr. Eriks report is not entirely accurate.  *See Reddick*, 157 F.3d at

3   722-23 ("[T]he ALJ developed his evidentiary basis by not fully accounting for the

4   context of materials or all parts of the testimony and reports.  His paraphrasing of

5   record material is not entirely accurate regarding the content or tone of the record.");

6   *see also Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating

7   physician's] statements must be read in context of the overall diagnostic picture he

8   draws.  That a person who suffers from severe panic attacks, anxiety, and depression

9   makes some improvement does not mean that the person's impairments no longer

10   seriously affect her ability to function in a workplace.").

11        The Court fails to see how Plaintiff's statements to Dr. Eriks regarding her

12   occasional back pain undermine her credibility.

13        Second, the ALJ rejected Plaintiff's pain testimony because she reported to

14   Dr. Eriks that she performed "all of the cooking, cleaning, shopping, and most of the

15   driving" despite previously stating that she "does little in the way of daily activities

16   and household chores."  (AR at 16.)  The Court agrees that the ALJ may infer from

17   Plaintiff's statements that her activity levels have increased.

18        However, there is objective medical evidence in the record that accounts for

19   Plaintiff's fluctuating activity levels.  The ALJ's own statement that Plaintiff

20   experiences "transient bouts" of cellulitis, (*see* AR at 16), illustrates the fact that

21   Plaintiff's pain and activity level may differ from one day to the next.

22        Further, Plaintiff did not state, nor did Dr. Eriks question her as to how

23   frequently Plaintiff performs, or the extent of, these daily activities.  For instance,

24   Dr. Eriks does not specify whether Plaintiff spends numerous hours creating an

25   elaborate six-course dinner, or whether she "cooks" by placing a prepackaged meal

26   in the microwave.  In short, the ALJ's reliance on Plaintiff's statement to Dr. Eriks

27   in making a daily activities finding is questionable and insufficient to explain how

28   Plaintiff's daily activities translate into an ability to perform work as a cleaner,

1    housekeeper, or packager.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.

2    1990) (ALJ errs in failing to make a finding to the effect that ability to perform daily

3    activities translated into the ability to perform appropriate work); *Reddick*, 157 F.3d

4    at 722 (only if a plaintiff's level of activity is inconsistent with her alleged

5    limitations will these activities have any bearing on claimant's credibility); *see also*

6    *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly

7    asserted that the mere fact that a plaintiff has carried on certain daily activities, such

8    as grocery shopping, driving a car, or limited walking for exercise, does not in any

9    way detract from her credibility as to her overall disability."); *Fair v. Bowen*, 885

10   F.2d 597, 603 (9th Cir. 1989) ("many home activities are not easily transferable to

11   what may be the more grueling environment of the workplace[]").

12        Third, the ALJ rejected Plaintiff's credibility because "she does not use an

13   assistive device for ambulation."  (AR at 16.)  However, the ALJ was aware that

14   Plaintiff used a walker at the hearing, (*see id.* at 549 (Plaintiff's attorney questioning

15   Plaintiff, "And you came to the hearing room with a walker and was that

16   prescribed?")), and Plaintiff testified that an emergency room physician prescribed

17   the walker for her when she was diagnosed with arthritis in her ankle.  (*Id.*)  The

18   record shows that an emergency room physician did, in fact, prescribe a walker to

19   assist Plaintiff.  (*Id.* at 212 (emergency room discharge instructions dated January

20   17, 2009, prescribing Plaintiff with a walker).)

21        Moreover, the record indicates Plaintiff likely needs a walker for assistance.

22   For instance, Plaintiff's Field Office Disability Report, completed by A. Olmedo and

23   dated October 7, 2005, states that Plaintiff "had to hold on to the edge of the desk to

24   help her stand, she had a hard time walking [because] her legs were swollen[,] her

25   left leg looked bru[is]ed and swollen as well as very dry and scar[r]ed."  (AR at 150-

26   151.)  Accordingly, the ALJ's conclusion that Plaintiff "does not use an assistive

27   device for ambulation" is contradicted by the record.

28

1

**V.**

2

**REMAND IS APPROPRIATE**

3      The court has discretion to remand or reverse and award benefits. *McAllister*

4   *v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989, *as amended* Oct. 19, 1989).  Where no

5   useful purpose would be served by further proceedings, or where the record has been

6   fully developed, it is appropriate to exercise this discretion to direct an immediate

7   award of benefits.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004);

8   *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000, *as amended* May 4, 2000),

9   *cert. denied*, 531 U.S. 1038 (2000).  Where there are outstanding issues that must be

10   resolved before a determination can be made, and it is not clear from the record that

11   the ALJ would be required to find plaintiff disabled if all the evidence were properly

12   evaluated, remand is appropriate.  *See Benecke*, 379 F.3d at 595-96; *Harman*, 211

13   F.3d at 1179-80.

14      Here, there are outstanding issues which must be resolved before a final

15   determination can be made.  On remand, the ALJ shall reconsider Plaintiff's

16   subjective complaints of excess pain and the resulting functional limitations, and

17   either credit Plaintiff's testimony or provide clear and convincing reasons supported

18   by substantial evidence for rejecting them.  In addition, if necessary, the ALJ shall

19   obtain additional information and clarification regarding Plaintiff's functional

20   limitations.  The ALJ shall reassess the medical opinions in the record and provide

21   sufficient reasons under the applicable legal standard for rejecting any portion of the

22   medical opinions.  The ALJ shall then proceed through steps four and five to

23   determine what work, if any, Plaintiff is capable of performing.[5/]

24      Based on the foregoing, IT IS ORDERED THAT judgment shall be entered

25   **REVERSING** the decision of the Commissioner denying benefits and

26

27      [5/]   In light of the Court's remand instructions, it is unnecessary for the Court to

28   address Plaintiff's remaining contention.  (*See* Joint Stip. at 4-7.)

14

1    **REMANDING** the matter for further administrative action consistent with this

2    decision.

3

4    Dated: July 20, 2010

5

6                                                    Hon. Jay C. Gandhi
                                                    United States Magistrate Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15